UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEROME GEARLDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:13-cv-1138-SEB-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

# Report and Recommendation on Complaint for Judicial Review

Plaintiff Jerome Gearlds applied on January 28, 2011, for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act, alleging that he has been disabled since August 1, 1999. An administrative law judge ("ALJ") held a hearing on June 27, 2012, at which Mr. Gearlds appeared and testified. On July 10, 2012, acting for the Commissioner of the Social Security Administration, the ALJ denied Mr. Gearlds's claim, finding that he is not disabled. The Appeals Council denied review of the ALJ's decision on May 17, 2013, rendering the ALJ's decision for the Commissioner final. Mr. Gearlds timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. This matter was referred under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to the appropriate disposition. (Dkt. 10).

Mr. Gearlds contends that the ALJ's decision is not supported by substantial evidence. He argues the ALJ erred by: (1) failing to find Mr. Gearlds met or

medically equaled Listing 12.04, 20 C.F.R. § 404.1520; (2) erroneously evaluating Mr. Gearlds's credibility; and (3) failing to give full consideration to all of Mr. Gearlds's impairments in determining his Residual Functional Capacity (RFC).[1] As addressed below, the court finds that the ALJ's findings are supported by substantial evidence in the record. The Commissioner's decision is therefore AFFIRMED.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[2] Mr. Gearlds is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

---

[1] Residual functional capacity (RFC) represents what an individual can still do, despite his or her limitations. 20 C.F.R. § 404.1545(a).

[2] The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, material identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

2

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled, despite his current medical condition. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The impairment must also meet the twelve-month duration requirement. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, education, and RFC; if so, then he is not disabled. The individual claiming disability bears the

burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is narrow and deferential. They must be upheld "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d

4

697, 700 (7th Cir. 2004). In addition, he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## The ALJ's Sequential Findings

The ALJ determined at step one that Mr. Gearlds had not engaged in substantial gainful activity since January 28, 2011, the application date. At step two, the ALJ identified the following severe impairments: chronic low back pain, mild astigmatism and myopia, major depressive disorder, and alcohol dependence. (R. 16). At step three, the ALJ evaluated Mr. Gearlds's severe impairments against the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and found "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."

For purposes of step four, the ALJ noted that Mr. Gearlds had no past relevant work. (R. 21). He then adopted, for purposes of steps four and five, the following residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), specifically:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can only occasionally climb stairs, balance, stoop, kneel, crouch or crawl; cannot climb ropes, ladders, or scaffolds; cannot work in hazardous environments; cannot drive automotive equipment due to visual difficulties; cannot do a significant amount of reading due to vision issues; can perform only routine and repetitive tasks; and cannot do tasks requiring public contact or more than occasional contact with co-workers.

(R. 18).

At step five and based on the opinion of the vocational expert, the ALJ decided that Mr. Gearlds is capable of making a successful adjustment to work that

exists in significant numbers in the national economy. Accordingly, the ALJ found at step five that he is not disabled.

## Analysis

**A. The ALJ's step three analysis of Mr. Gearlds's mental impairments is supported by substantial evidence and the ALJ was not required to obtain additional expert testimony.**

1. Substantial evidence exists for the ALJ's step three determination.

At step three, the ALJ evaluated Mr. Gearlds's mental impairments against listings 12.04 and 12.09, and found that "singly and in combination, [they] do not meet or medically equal the criteria of listings." (R. 17). He determined that the C criteria of listing sections 12.04 (affective disorders) were not met because the evidence in the record failed to establish evidence of episodes of "decompensation, potential episodes of decompensation, or the inability to function outside a highly supportive living arrangement." (R. 18.). As to the B criteria, (which are the same for both listings), the ALJ also found upon inquiry regarding Mr. Gearlds's abilities with respect to activities of daily living, marked difficulties in maintain social functioning, and marked difficulties in maintain concentration, persistence, or pace that Mr. Gearlds did not meet or equal the criteria of the listing.

The ALJ addressed Mr. Gearlds's mental impairments and functioning by referring to the consultative examinations of Vivek Prasad, M.D., in February 2010, and Jason Hankee, Psy. D., in March 2011, both of whom assessed Mr. Gearlds with major depressive disorder and alcohol dependence. The ALJ noted that during the

consultation with Jason Hankee, Psy. D., Mr. Gearlds "seemed irritable" and "appeared to put forth very little effort."

With respect to daily living activities, the ALJ cited Mr. Gearlds's testimony that during the day he typically prepares his own meals, watches television, and takes naps. He indicated he is self-sufficient in personal care and he confirmed this during the consultative examination. The ALJ cited a written statement which states Mr. Gearlds "shops, pays bills, and uses public transportation." (R. 17). As to the social functioning, Mr. Gearlds noted that he lives with a friend and his friend's girlfriend and that he visits his sister. The ALJ also noted Mr. Gearlds's reporting during his February 2010 consultative examination that he attends church and has no difficulty getting along with others, but also likes to keep to himself. (R. 17, 215). The ALJ concluded that Mr. Gearlds's performance of his daily living activities is no more than mildly limited.

With respect to the functional area of concentration, persistence, or pace, the ALJ found a moderate degree of limitation. (R. 17). He cited Mr. Gearlds's difficulty understanding and responding to questions at the hearing, and the mental status examination findings which "show some concentration deficits including some problems with autobiographical recall as well as recalling three unrelated words after a 5 minute delay." (R. 17).

Mr. Gearlds contends that the ALJ's step three analysis is flawed, and argues that the medical evidence proved the B criteria with consistent GAF assessments of

40 and 45.[3] These assessments were given during two consultative examinations. The first evaluation, by Dr. Prasad, was conducted on February 20, 2010, and the second evaluation was conducted by Dr. Hankee, on March 23, 2011. Mr. Gearlds argues that the ALJ arbitrarily and erroneously rejected these opinions and failed to give good reasons for doing so. Although the ALJ did not specifically mention the GAF scores, his analysis at step three considered the opinions of Dr. Prasad and Dr. Hankee and the symptomatic behavior exhibited in their medical reports, which contained the GAF scores. (R. 17, 18). Moreover, neither doctor stated whether Mr. Gearlds met any listing. The ALJ also noted that Dr. Hankee observed that "the claimant seemed irritable during the examination and appeared to put forth very little effort." This statement goes to credibility, but also supports the ALJ's explanation for not finding an impairment or combination that meets or medically equals one of the listed impairments. Because the GAF scale does not directly correlate with the severity requirements under the mental health listings, and because the ALJ discussed Mr. Gearlds's mental health behaviors in combination with the areas of his daily living and functional concentration in the mental health listings, the court cannot find that the ALJ's step three analysis is flawed simply because he did not attempt to specifically correlate GAF scores in making his step three decision. *See Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010); *Wilkins v. Barnhart,* 69 Fed. Appx. 75 at 4 (7th Cir. 2003) (cited by *Denton)* (ALJ was not

---

[3] The Global Assessment of Functioning (GAF) is a numeric scale used by mental health medical professionals to subjectively rate the social, occupational, and psychological functionality of adults. *See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision 32 (2000).

required to mention a GAF score of 40 because GAF score is designed to influence treatment decisions and not measure disability under the Social Security Act).

2. The ALJ did not substitute his own layperson opinion.

Mr. Gearlds also argues that the ALJ relied only on his layperson's opinion in determining that the low GAF assessments were inconsistent with his interpretation of the evidence. This argument has no merit. It is true that an ALJ may not rely on his own layperson's opinion by selectively discussing portions of a physician's report that support a finding of non-disability, while ignoring other portions that suggest a disability. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir.2009). However, the ALJ did not ignore the GAF assessments of 40 and 45 and rely on his own layperson subjective opinion, but rather sufficiently articulated his reasoning at step three by discussing the consultative examinations, the symptomatic behavior listed in their medical reports which contained the GAF scores, and Mr. Gearlds's alcohol use. These reasons, along with the observation that Mr. Gearlds put "forth very little effort," formed an accurate and logical bridge from the record of evidence to his conclusion that he did not meet a listing impairment. *See Dixon,* 270 F.3d 1177 (7th Cir. 2001).

3. The ALJ was not required to seek additional medical expertise.

Lastly, Mr. Gearlds has not shown that without a medical expert at the hearing, the administrative record lacked sufficient evidence for the ALJ to make a decision regarding the severity of Mr. Gearlds's mental impairments at step three. Mr. Gearlds contends that the denial decision was based only on the ALJ's

layperson's opinion or upon the non-examining, non-treating opinion of the agency's reviewing psychologists and that the ALJ should have summoned a medical expert. Although an ALJ may order a consultative examination when the evidence as a whole is insufficient to support a determination or decision on the claim, the burden is on the claimant to introduce some objective evidence indicating that further development is required.  *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *See also Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007).  Mr. Gearlds was represented by counsel throughout the administrative proceedings and could have a presented an opinion on medical equivalence in 2011, at the time of the state agency consultant examinations.  The burden is on the claimant, in the circumstances such as these where he is represented by counsel, to introduce objective evidence demonstrating the need for further development.  *Nelms,* 553 F.3d 1093, 1098 (7th Cir.2009).  "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d at 246 (7th Cir. 1994).  The ALJ properly considered the consultative examinations and relied on the state-agency consultants, and they provide substantial evidence for his determination.  Under these circumstances, the ALJ was not required to obtain an additional medical expert opinion to support his determination at step three.

**B. The ALJ's credibility assessment was sufficient and supported by substantial evidence.**

An ALJ is required to consider a claimant's statements about his symptoms and how they affect his daily life and ability to work. 20 C.F.R. § 404.1529(a). He is not, however, required to accept the claimant's statements blindly, but must sufficiently explain his reasons for the finding on credibility, supported by the evidence in the record. *Schwabe v. Barnhart,* 338 F.Supp.2d 941 (7th Cir. 2004). The ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). Here, the court agrees with Mr. Gearlds that the ALJ's initial boilerplate finding is perfunctory, and the Seventh Circuit has criticized it repeatedly as useless and "unhelpful to a reviewing court." (R. 18; *Bjornson v. Astrue,* 671 F.3d 640 (7th Cir. 2012). *See also Parker v. Astrue,* 597 F.3d 704, 709 (7th Cir. 2010). The ALJ's credibility assessment continues, however, with a proper assessment to which this court must give deference. The ALJ considered the record as a whole to find Mr. Gearlds's limitations less severe than alleged. He considered his daily activities, lifestyle, and previous work history, noting that there "has been very little work activity, even during periods when disability is not alleged." (R. 19). He cited Mr. Gearlds's contrasting testimony in which he claimed to do practically nothing around the house, but also said he was able to prepare his own meals, perform his own self-care, watch television, visit family, attend church, and use public transportation. (R. 19, 36-38). The ALJ also found Mr. Gearlds's credibility diminished because of "no-shows for appointments," no medication having been

11

taken "other than over the counter medication," and his not seeking or receiving treatment. Mr. Gearlds has not demonstrated that the ALJ's credibility assessment was "patently wrong," and substantial evidence in the record supports that assessment.

## C. The ALJ's Residual Functional Capacity finding is supported by substantial evidence.

Mr. Gearlds's challenge to the ALJ's RFC focuses on whether the ALJ failed at step five to account for Mr. Gearlds's major depression and the ALJ's assessed moderate impairment in social functioning and concentration, persistence, or pace. (Dkt. 18 at p. 17). His argument fails to consider the entirety of the ALJ's decision. The ALJ relied upon the opinions of the state-agency reviewing psychologists and concluded Mr. Gearlds could perform simple, routine work. (R. 20-21, 252). The ALJ also added limitations to work that did not involve "tasks requiring public contact or more than occasional contact with co-workers." (R. 18). This limiting assessment correlates with the functional capacity opinion of the state agency doctors and reasonably translated the opinions of Dr. Kennedy, a state agency psychologist, into his RFC. (R. 252); *Johansen v. Barnhart,* 314 F.3d 283, 289 (7th Cir. 2002) (where consulting physician translated his findings into a specific RFC assessment, the ALJ may rely on that assessment). Moreover, the ALJ's hypothetical question to the vocational expert represented all the restrictions that the ALJ included in his RFC. (R. 45-46). (*See Jelinek v. Astrue,* 662 F.3d 805, 813 (7th Cir. 2011) (ALJ's "must provide vocational experts with a complete picture of a claimant's residual functional capacity").

12

Because the RFC is supported by substantial evidence and because the ALJ relied on jobs information that took into account all functional limitations the ALJ found were supported by the record, the ALJ's decision at step five that Mr. Gearlds was not disabled must be affirmed.

## Conclusion

For the foregoing reasons, the Commissioner's decision is AFFIRMED because it is supported by substantial evidence adequate to support his conclusion. Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

IT IS SO RECOMMENDED.

Date: 07/03/2014

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

All ECF-registered counsel of record via email generated by the court's ECF system